THE CITY OF TALLAHASSEE, APPELLANT, vs. JUSTUS R. FORTUNE, APPELLEE.

Aggregate Corporations receiving their corporate powers and bound by their corporate duties with their own consent, are liable for special damage occa-sioned by their nonfeasance, or breach of duty, in an action of trespass on the case.

The City of Tallahassee having full power and authority to remove and to pre-vent nuisances is liable in such an action for damage caused by the failure to remove them.

But a plaintiff claiming damages as the result of a nuisance, must shew that he acted with common and ordinary care.

This case comes up by appeal from a judgment of the Circuit Court of the County of Leon rendered at the spring term, 1849, Judge BALTZELL presiding.

The facts of the case and the pleadings are stated in the opinion delivered by the Court, affirming the judgment of the Court below.

*Archer,* for Appellant, contended

1st. That trespass for nonfeasance does not lie against a municipal corporation, and cited Edwards vs. Union Bank, 1 Flor. Rep. 136–147.   3 Peters, 398, 409.   11 Missouri, 59.

2d. If the action lies, the declaration in this case shews that the injury resulted from the negligence of the plaintiff in the Court below, and that therefore he was not entitled to recover.   Smith vs. Smith, 2 Pick. 621.

*Papy,* for Appellee.

The question arising here is as to the liability of the City for neglecting to abate a nuisance whereby plaintiff suffered an injury in the loss of a horse.

By the third section of the act incorporating the City of Tallahassee, the City Council is invested with full power and authority " to prevent and remove nuisances," &c., and generally to provide for the interior police and good government of said City.   See pamphlet laws, 1840, page 12.

The declaration alleges that a chasm existed in one of the streets, and that plaintiff's horse fell into it and was injured, so that he died, &c.

That this chasm was a nuisance, is shown by the definition given to the term by the books :   " It is the doing a thing which tends to the annoyance of all the King's subjects, or the neglecting to do a thing which the common good requires," &c.   1 Hawk., 360.   4 Black. Com., 166.

There is no distinction between the powers and duties of a corporation.   When the public good requires the exercise of their powers, it is their duty to exercise them.   People vs. City of Albany, 11 Wendell, 542.

LANCASTER, J.

Fortune, the appellee in this Court, brought suit by action of trespass on the case, against the appellant, the " City of Tallahassee, in

Leon County Circuit Court, alleging that a certain street within the corporate limits of said city is, and for a long time has been, a common highway for the good citizens of Florida, and their horses and cattle, to go, return, pass and repass, at their will and pleasure, at all times. That plaintiff, on the 3d day of October, A. D., 1848, was possessed of a gray mare of great value, to wit, of the value of one hundred and twenty five dollars. That said mare was employed by the plaintiff on said 3d day of October, in a lawful manner, according to the common usage and custom. That the street aforesaid was in the other parts thereof, except the east end, in good repair and condition, and passable for men and horses ; that, at the east end of said street, there was a large ditch, gully or chasm, which obstructed the free passage of the same. That defendant, in no wise ignorant that said east end of said street was out of repair, and ruinous and impassable, permitted the same so to remain on the aforesaid 3d day of October, and for a long time before that time, and omitted, contrary to the legal duty of said corporation, to fill up and repair the said ditch, gully or chasm, whereby the said mare of the plaintiff, then and there passing by, along and over the said street, fell into the said ditch, gully or chasm, and thereby became so much injured and bruised, that she died of the injuries and bruises occasioned by her fall as aforesaid.

To which declaration, the defendant by its attorney filed a general demurrer; which demurrer was overruled by the Court, and an inquiry of damages awarded to the plaintiff.

Whereupon the defendant appealed to this Court, and assigned as grounds for its appeal the following, to wit :

1st. Trespass does not lie against a municipal corporation.

2d. If the action lies, the declaration in this case shows that the injury resulted from the negligence of the plaintiff.

The first ground assigned will now be considered, to wit : Whether trespass lies against a municipal corporation ; and it was urged in argument that actions for torts can only be maintained against money corporations. To understand the force of this objection, it may be necessary to look at the powers of the City of Tallahassee, as conferred by the act entitled " An act to incorporate the City of Tallahassee," approved 2d of March, 1840, Pamphlet Laws, page 42. This is a private act of the Legislature—was referred to as such by

both counsel in the argument before this Court; but we think may be noticed under the provision of the statute of November 12th, 1828, which renders it unnecessary to plead specially private acts. See Tho. Dig., 332.

The act of incorporation provides that, by their corporate name, (City of Tallahassee,) they may sue and be sued, plead and be impleaded, and do all other acts as natural persons—may purchase and hold, real, personal and mixed property, and dispose of the same for the benefit of the City. By the second section, the government is vested in a city council, composed of an intendant and eight council men, of prescribed qualifications. By the third section of the act of incorporation, very large power and authority are vested in the city council, and among others, the power and authority " to prevent and remove nuisances" and generally " to provide for the interior police and good government of the City," By this section, power is given to said city council to levy taxes for the purposes recited in the preceding section.

We were referred to several cases to show that this action will not lie ; all of which will be noticed. The first is Towle vs. the Common Council of Alexandria. 3 Peters S. C. Rep., pages 398 to 410. In that case, the plaintiff brought his action on the case, against the defendant, for damages charged to have been sustained by him, by reason of their failing to take bond and security from an auctioneer, licensed by them for certain years, as alleged, contrary to the statutory duty of the said corporation. To the declaration, a general demurrer was filed ; which was sustained. Whereupon, the plaintiff prosecuted a writ of error to the Supreme Court. Ch. J. Marshal, in delivering the opinion of that Court, said: " The common council had granted a license to carry on the trade of an auctioneer, which the law did not empower that body to grant." That " he is not the officer or agent of the corporation, but is understood to act entirely for himself, as a tavern keeper, or any other person, who may carry on business under a license from the corporate body. The injury alleged in the declaration as the foundation of the action, is the omission to take the bond required by law. Now, if the common council was not required or enabled by law to take a bond, the action cannot be sustained." And upon this reasoning, the demurrer was held good, and the judgment below affirmed. But the Court

says in that case, " That corporations are bound by their contracts" is admitted; that money corporations, or those carrying on business for themselves, are liable for torts, is well settled. But that a legislative corporation, established as a part of the government of the country, is liable for losses sustained by nonfeasance—by an omission of a corporate body to observe a law of its own, in which no penalty is provided, is a principle for which we can find no precedent. We are not prepared to make one in this case."

In the above case, the point as to the right of the plaintiff to have his action on the case against the corporation, does not appear to have been made or decided ; but the case went off on the ground that defendants did not appear to be nonfeasors, by omitting to do any thing which, by the act of their incorporation, they were authorized or required to do.

In the case of Hawthorn vs. the City of St. Louis, the only question is, whether the salary of an officer of the corporation can be subject to an execution against such officer, by a proceeding by garnishment against the City. The Court holds that it cannot, and in this particular distinguishes between its being a public municipal corporation and a private corporation, such as banks, insurance companies and similar incorporations. 11 Miss. R., 60. We do not see that this authority decides any thing touching the question in regard to the bringing of an action on the case against a corporation for nonfeasance, by which any one has sustained a special damage.

The case of Edwards vs. the Union Bank of Florida, 1 Florida Reps. 136 to 155, is an action of trespass " *vi et armis*," brought by the plaintiff vs. the corporation of the Union Bank. The question is there raised whether this action will lie against a corporation, and after an elaborate examination of the authorities, the Court hold the action well brought—but this was an action against a private money corporation. And we must now look to see whether trespass can be maintained against other corporations aggregate. In the case of Riddle vs. Proprietors of locks and canals on Merrimack river, 7 Mass., 189., Parsons, Ch. J., delivering the opinion of the Court, says : " It is one of the maxims of the common law, that a man specially injured by the breach of duty of another, shall have his remedy by action. If the breach of duty be by an individual, there is no question, and why should a corporation receiving its corporate powers,

and obliged by its corporate duties with its own consent, be an exception, when it has, or must be supposed to have, an equivalent for its consent ?"   " We distinguish between proper aggregate corporations, and the inhabitants of any district, who are by statute invested with particular powers without their consent.   These are in the books sometimes called " *quasi* corporations."   Of this description are counties or hundreds in England, and counties, towns, &c., in this State, (Mass)." (and counties and townships in Florida). " Although *quasi* corporations are liable to information or indictment for the neglect of a public duty imposed on them by law, yet it is settled in the case of Russel *et al.* vs. Inhabitants of the county of Devon., 2 D. & E., 667, that no private action can be maintained against them for a breach of corporate duty, unless such action be given by statute.   And the sound reason is, that having no corporate fund, and no legal means of obtaining one, each corporator would be liable to satisfy any judgment rendered against the corporation.   This burthen the common law will not impose—but in cases where the statute is an authority, to which every man must be considered as assenting.   But in regular corporations, which have, or are supposed to have, a corporate fund, this reason does not apply."   And he cites with approbation, the case of the Mayor of Lynn vs. Turner Cowp. 86, where the principle is established that " *case* will lie against a corporation for neglect of a corporate duty, by which the plaintiff suffers."   The doctrine of this last case appears to be sustained in New York.   In the case of the People vs. corporation of Albany, at p. 543, 11 Wendell R., Nelson J., delivering the opinion of the Court, says : " It is well settled that when a corporation or an individual is bound to repair a public highway or navigable river, they are liable to indictment for neglect of their duty.   An indictment and an information are the only remedies to which the public can resort for a redress of their grievances in this respect.   " If an individual has suffered a particular injury, he may recover his loss by an action on the case," for which position many authorities are there cited. The same doctrine is asserted 1 Coke on Lit., 56 a.   " But the law for this common nuisance hath provided an apt remedy, and that is presentment in the Leete or in the Torne, unlesse any man hath a particular damage, as if he or his horse fell into the ditch, whereby he received hurt and losse, there for this special damage, which is not

common to others, he shall have an action upon his case.   And all this was resolved by the Court in the King's Bench."   And again in 3d Blackstone, 219, the same doctrine is recognized, as well also as the doctrine that a ditch dug across a common highway is a common nuisance.   4 Blackstone, 167, defines a common law nuisance thus :   " The doing a thing to the annoyance of all the King's subjects, or the neglecting to do a thing which the public good requires." We can have little difficulty in asserting that the large ditch, gully or chasm, situated in the east end of the street, named in the declaration, which street was a common highway as asserted by the declaration and admitted by the demurrer, was a common nuisance : that the corporation of the City of Tallahassee is an aggregate corporation, which has or may be supposed to have a common fund, as it has the power of assessing and collecting taxes, and the power to purchase and hold personal, real, and mixed property.   It has also the power to prevent and remove nuisances, and provide for the interior police and good government of the city.   It was contended by appellee, in argument, (and not denied by appellant) as we think, with much propriety, that the legal power to remove nuisances, having been conferred on the corporation by statute, carried with it the implied legal obligation to remove them.

It is therefore the opinion of the Court, that the City of Tallahassee was guilty of a nonfeasance in permitting the nuisance mentioned in appellee's declaration to remain, and plaintiff having lost his mare by means of her falling into the said common nuisance, and being thereby bruised so that she died, he is entitled to have an action of trespass on the case against the said corporation, for said special damage, unless it occurred by his own gross negligence.   And this brings us to consider the second objection of appellants.

The following statement was agreed by counsel to be a part of the averments in the declaration as demurred to :   " On the 3d day of October, Geo. W. Hutchins, who had been using Fortune's mare, returned with her and hitched her near the place where Fortune's tin shop was kept.   The mare got loose and nothing more was seen or heard of her until next morning, although diligent search was made for her as soon as it was discovered she had got away.   She was found next morning in the bottom of the chasm complained of, which was immediately opposite the lot in which she was usually

kept.    The mare was badly hurt and died on the day she was discovered."    Parker, Ch. J., says, in the case of Smith vs. Smith, 2 Pick. 624, " to entitle the plaintiff to an action of damages resulting from a nuisance, he must shew that he acted with common and ordinary care."    And so we take the law to be ; if a person should go headlong with his beast upon a nuisance, which (with ordinary care) he might have avoided, he ought not to have damages for his loss in consequence of his own recklesness.    In effect this was decided in the case of Butterfield vs. Forrester, 11 East., 60.    The facts of the present case show that Fortune's mare, after being used, was hitched before his tin shop, and where of course she could not remain long without notice.    It is the custom of the people generally, when in the streets, to hitch their horses to a hook, peg, post, tree or rack, and leave them while the riders attend respectively to their own business. The thing is daily (and frequently every day) done by the most careful as well as by careless persons, and cannot, in our opinion, form a ground of allegation of negligence or want of ordinary care, in the plaintiff ; but horses so hitched often escape, and this is accident rather than negligence.    The mare then having broken loose, or having accidentally escaped from her fastening, it is presumed sought to return to her accustomed enclosure or stall, as it was contiguous to the chasm complained of, and on her way thither fell in and was lost as the facts appear.    Had not the chasm been in the street it is reasonable to suppose that the mare would have returned to her stable without damage.    It was therefore the direct cause of her death, and of her owner's loss.    It was there in consequence of the wrongful negligence of the defendant, and in our opinion it ought to pay the damages such nonfeasance occasioned.

The judgment of the Court below is affirmed with costs.

*Per curiam.*